IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

BELINDA D. ATTWOOD,                          )
ROBERT R. ATTWOOD, her husband,              )
individually and as parents and natural      )
guardians of WESLEY R. ATTWOOD,              )
a minor,                                     )
                                             )
                Plaintiffs,                  )
                                             )
        v.                                   )        Civil Action No. 06-218
                                             )
PETERS TOWNSHIP, ROBERT J. LEWIS,)           Judge Cercone
JACQUELINE L. CAMPBELL,                      )        Magistrate Judge Hay
ROBERT L. ATKINSON,                          )
DANIEL P. MCMENAMIN,                         )
WILLIAM R. NAUMOFF,                          )
JAMES E. SCHAFER, Council persons of         )
Peters Township, PETERS TOWNSHIP             )
POLICE DEPARTMENT,                           )
HARRY J. FRUECHT, Chief of Peters            )
Township Police Department,                  )
OFFICER MARK E. MADEY,                       )
SERGEANT DONALD F. HEINLEIN,                 )
OFFICER GERALD W. CHESNIC,                   )
PETERS TOWNSHIP AMBULANCE                     )
SERVICE, BRIAN SHUGAR,                       )
WALTER PILOF, ANTHONY CHAO,                  )
JEREMY ACKER,                                )
                                             )
                Defendants.                  )

REPORT AND RECOMMENDATION

I.      RECOMMENDATION

        It is respectfully recommended that the motion to dismiss submitted on behalf of

Peters Township, the Council persons of Peters Township, Peters Township Police Department

and the individual police officers [Dkt. No. 26] be granted.

II.     REPORT

        Plaintiffs brought this action under 42 U.S.C. § 1983, alleging that defendants

violated their rights under the due process clause of the Fourteenth Amendment to the United

States Constitution while responding to the scene of a motor vehicle accident in which plaintiffs Belinda D. Atwood ("Atwood") and her son, Wesley R. Atwood ("Wesley"), were involved.

According to the complaint, Atwood and Wesley were traveling along Valleybrook Road in Peters Township, Pennsylvania, on February 25, 2004, when their vehicle, which Atwood was operating, "left the roadway, struck a utility pole and came to rest against a tree." Complaint ¶¶ 24-25. Wesley, who was riding in the back seat, apparently suffered injuries to his nose and upper lip causing bleeding. Complaint ¶ 26. When defendants Chief Harry J. Fruecht, Officer Mark E. Madey, and Sergeant Donald Heinlein arrived at the scene, Atwood advised them that, notwithstanding Wesley's bloody nose, she did not believe that either of them were seriously injured and that an ambulance was not needed. Complaint ¶ 27. The Peters Township Ambulance Service ("Ambulance Service"), nevertheless arrived at the scene and defendants Brian Shugar, Walter Pilof, Anthony Chao and Jeremy Acker, along with the officers in attendance, allegedly pressured Atwood into having her son taken to the hospital. Complaint ¶¶ 28, 30. Plaintiffs also allege that the police officers then removed Atwood from the ambulance in which Wesley had been placed at defendant Shugar's request thereby restraining her from having further contact with medical personnel and the treatment of her son. As well, plaintiffs allege that Atwood requested that her son be transported to a hospital other than Canonsburg General Hospital because of issues she had with treatment she had previously received there. Complaint ¶¶ 30, 31, 33.

It is also alleged that after the police officers determined that Atwood's speech was slurred she was given a portable breath test which was negative for alcohol. Atwood, according to the Complaint, was nevertheless "unnecessarily" required to undergo several field sobriety tests which apparently led to her being placed under arrest for suspicion of DUI without probable cause. Complaint ¶¶ 32, 33, 35. Atwood was subsequently transported to Peters

2

Township Police Station and then taken to Canonsburg General Hospital where it is alleged she was "inappropriately" asked to undergo a blood test.  Complaint ¶¶ 33, 34.

Plaintiffs also allege that prior to these events Atwood "had incurred the disapproval" of the Peters Township Police Department because of inquiries she had made regarding the D.A.R.E. Program run by the department and that when Chief Fruecht arrived on the scene he stated to Atwood, "I know you," and thereafter treated her in a "negative and derogatory fashion."  Complaint ¶ 36.

Plaintiff filed the instant complaint under § 1983 on February 22, 2006, bringing claims under the Due Process Clause of the Fourteenth Amendment of the United States Constitution and the Constitution of the Commonwealth of Pennsylvania against Peters Township and the above-named Peters Township Council members (collectively, "Township defendants") at Count I; against the Peters Township Police Department and the above-named officers (collectively, "Police defendants") at Count II; and against the Peters Township Ambulance Service and its above-named employees at Count III.  Plaintiffs have also brought a claim for "negligent and/or intentional conduct" against all the defendants at Count IV.  The Township defendants and the Police defendants have now filed a motion to dismiss pursuant to Rule 12(b)(6).

In reviewing a motion to dismiss under Rule 12(b)(6), all well pleaded allegations of the complaint must be accepted as true and viewed in a light most favorable to the non-movant.  Brader v. Allegheny General Hospital, 64 F.3d 869, 873 (3d Cir. 1995); Scrob v. Patterson, 948 F.2d 1402, 1405 (3d Cir. 1991).  The Court is not, however, required to accept as true unsupported conclusions and unwarranted inferences.  Schuylkill Energy Resources v. PP&L, 113 F.3d 405, 417 (3d Cir. 1997).  Thus, "if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," the motion to dismiss is properly granted.  Haines v. Kerner, 404 U.S. 519, 520-21 (1972), quoting Conley v.

Gibson, 355 U.S. 41, 45-46 (1957).  The issue is not whether the plaintiff will prevail in the end but only whether he should be entitled to offer evidence in support of his claim.  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).

Further, in resolving a 12(b)(6) motion, Courts are generally to consider only the allegations set forth in the complaint, any exhibits submitted with the complaint and matters of public record.  Pension Benefit Guaranty Corp. v. White Consolidated Industries, Inc., 998 F.2d 1192, 1196 (3d Cir. 1993), cert. denied, 510 U.S. 1042 (1994).  If matters outside the pleadings are considered, under Rule 12(b)(6), the motion is properly converted to one for summary judgment so that the plaintiff has an opportunity to respond.  Id.  The Court of Appeals for the Third Circuit has created an exception to the general rule, however, holding that:

> a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document. . . . Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document on which it relied.

Id.  See Beverly Enterprises, Inc. v. Trump, 182 F.3d 183, 190 n.3 (3d Cir. 1999),  cert. denied, 528 U.S. 1078 (2000).

Here, defendants have submitted copies of the police accident report (Exhibit A), the Police Department's Narrative regarding the accident (Exhibit B), the Criminal Complaint filed against Atwood (Exhibit C), Officer Madey's Use of Force Report (Exhibit D), and the Chemical Testing Warnings and Report of Refusal to Submit to Chemical Testing (Exhibit E). In addition, plaintiffs have submitted a copy of the EMS Report (Exhibit A).  Because no one has disputed the authenticity of these documents and because the allegations in the complaint appear to revolve around the events reported therein it appears that they are properly considered by the Court without converting the instant motion into one for summary judgment.

Turning to defendants' motion then, the Court notes at the outset that plaintiffs have conceded that the Police Department is properly dismissed as a defendant in this matter and that their claims brought under the Pennsylvania Constitution are properly dismissed as well. Indeed, it cannot be disputed that the Police Department is merely a sub-unit of the Township and is not subject to suit in a separate capacity or that Pennsylvania law does not include a statutory equivalent to the Civil Rights Act, 42 U.C.S. § 1983, providing for monetary relief.  See Bonenberger v. Plymouth Township, 132 F.3d 20, 25 n. 4 (3d Cir. 1997) ("[W]e treat the municipality and its police department as a single entity for purposes of section 1983 liability."); Burkhart v. Knepper, 310 F. Supp. 2d 734, 738 (W.D. Pa. 2004) (Dismissing Police department from suit thereby rejecting plaintiffs' argument that each governmental sub-unit or department is distinct from the government at large.); Pollarine v. Boyer, 2005 WL 1806481 *2 (E.D. Pa. July 29, 2005) (Holding that the Pennsylvania Constitution does not confer a private right of action on an individual who seeks to recover damages from a defendant.); Morris v. Dixon, 2005 WL 950615 *12 (E.D. Pa. April 20, 2005) (Dismissing state constitutional claim in which monetary damages were sought.)  As such, defendants' motion with respect to these issues is properly granted.

Further, although not conceded by plaintiffs, it appears that the § 1983 claims brought against the individual council members and police officers in their official capacities are properly dismissed as well as it is well settled that a suit brought against a municipal employee in his or her official capacity is the equivalent of bringing an action against the government entity itself.  Smith v. School District of Philadelphia, 112 F. Supp. 2d 417, 425 (E.D. Pa. 2000), citing Hafer v. Melo, 502 U.S. 21, 25 (1991).  See Aitchison v. Raffiani, 708 F.2d 96, 100 (3d Cir. 1983).  Here, plaintiffs have brought their § 1983 claims against the Township as well as the individual council persons and various police officers.  Thus, to the extent these claims have

5

been brought against the individual defendants in their official capacities, they are superfluous and properly dismissed.

This having been said, it nevertheless appears that plaintiffs have failed to state a viable § 1983 claim against the individual defendants even in their personal capacities and, thus, those claims are properly dismissed as well.

Section 1983 creates a private right of action for an individual who asserts that he or she has been deprived of any rights or privileges secured by the Constitution of the United States or other federal laws by an actor who allegedly violated those rights under the color of state law.  Shuman ex rel. Shertzer v. Penn Manor School District, 422 F.3d 141, 146 (3d Cir. 2005).  The statute itself does not create any substantive rights, but instead protects rights established by the Constitution or other federal laws.

Although not specifically set forth in the instant Complaint, it appears that plaintiffs have premised their civil rights claims on alleged violations of the Fourteenth Amendment's substantive due process protection against interference with parental rights and the Fourth Amendment right to be free from arrest without probable cause.  With respect to the first, defendants argue that plaintiffs have failed to state a § 1983 claim for interfering with parental rights as the intrusion complained of does not rise to the level of a due process violation.

It is well settled that parents have a fundamental and, thus, a constitutionally protected liberty interest in the care, custody and management of their child.  Patterson v. Armstrong Co. Children and Youth Services, 141 F. Supp. 2d 512, 520 (W.D. Pa. 2001), quoting Croft v. Westmoreland Co. Children and Youth Services, 103 F.3d 1123, 1125 (3d Cir. 1997).  That interest, however, is not absolute but is limited by the compelling governmental interest in the protection of children.  Id.  The government, however, may not interfere with the parent-child relationship unless it adheres to the requirements of procedural and substantive due process under the Fourteenth Amendment which is designed to protect an individual from arbitrary

6

government action.  Miller v. City of Philadelphia, 174 F.3d 368, 374-75 (3d Cir. 1999).  Further, the Court of Appeals for the Third Circuit has held that "where abusive government action by a member of the executive branch is alleged, 'only the most egregious official conduct can be said to be arbitrary in the constitutional sense.'"  Miller v. City of Philadelphia, 174 F.3d at 375, quoting County of Sacramento v. Lewis, 523 U.S. 833, 846 (1998).  Thus, executive action will only give rise to liability when it is "so ill-conceived or malicious that it 'shocks the conscience.'"  Id.  See Patterson v. Armstrong Co. Children and Youth Services, 141 F. Supp. 2d at 521-22.

In the instant case, nothing in the Complaint or the documents submitted by the parties suggest that the officers' conduct in insisting that Wesley be taken for medical treatment was so ill-conceived or malicious that it shocks the conscience.  Indeed, it cannot be disputed that Atwood had just run her vehicle into a utility pole and that Wesley had, in fact, sustained injury to his nose and upper lip and was bleeding.  Complaint ¶ 25.  Moreover, according to the EMS report -- which has been provided to the Court by plaintiffs -- when the ambulance arrived at the scene shortly after the accident, Atwood was unaware of having been in a motor vehicle accident, was herself complaining that her head hurt, had slurred speech, responded slowly to questions, could not figure out that she still had her seatbelt on when she tried to get out of the vehicle and could not find the release when so informed by the paramedics, could not comprehend what the paramedics were saying to her, took multiple attempts to step over a 6-8 inch high guide rail, and staggered to the ambulance where Wesley had been taken.  As well, her son indicated to the paramedics that Atwood was not acting normally and had almost fallen down the steps earlier that morning.  Under these circumstances, and as found by the paramedics, it does not appear that Atwood was capable of making logical or appropriate decisions regarding Wesley's need for medical attention and the fact that the officers attempted to convince Atwood that medical treatment was necessary cannot be said to shock one's conscience.  This appears particularly true

here where Atwood ultimately acquiesced to having Wesley transported to the hospital where he was reunited with both of his parents shortly thereafter.  See Complaint ¶ 30.  See also Tenenbaum v. Williams, 193 F.3d 581, 601 (2d Cir. 1999), cert. denied, 529 U.S. 1098 (2000) (Finding that the removal of plaintiff's child for several hours to conduct a medical examination was not severe enough to violate plaintiff's substantive due process rights.)

Notably, plaintiffs have not argued that the officers' conduct in this regard shocks the conscience but have suggested only that they arrested Atwood merely so that they could override her decision to refuse medical treatment for her son in retaliation for prior "run-ins" with Chief Fruecht.  As previously discussed, however, given the circumstances surrounding the accident, the officers' conduct cannot be said to shock the conscience and the fact that they may have been motivated by a retaliatory animus does not alter that fact.  See Patterson v. Armstrong Co. Children and Youth Services, 141 F.Supp. 2d at 523 (Finding that, under the circumstances, the social worker's decision to take plaintiff's child into protective custody did not shock the conscience even if done in retaliation for the plaintiff's temerity to refuse to give a statement until after she had spoken with her attorney.)  Moreover, the suggestion that Atwood was arrested so that the police could impose their will regarding her son's medical treatment appears to be belied by plaintiffs' own Complaint in which they indicate that Atwood had acquiesced to ambulance transport of her son before she was arrested.  Complaint ¶ 30.  See Plf. Exh. A: EMS Report, pp. 2, 3.  It therefore appears that plaintiffs can prove no set of facts which would entitled them to relief and plaintiffs' claim that their parental rights were violated is properly dismissed.

Defendants also argue that plaintiffs have failed to state a § 1983 claim for false arrest, malicious prosecution or excessive force against the individual police officers and that those claims are properly dismissed as well.

Initially the Court notes, as defendants have done, that plaintiffs have improperly alleged that the officers' actions in this regard violate their rights under the Fourteenth

Amendment when, in fact, the rights at issue are protected by the Fourth Amendment.  Because
these claims cannot be brought as substantive due process claims under the Fourteenth
Amendment, plaintiffs' claims in this regard are properly dismissed on this basis alone.  See
Ankele v. Hambrick, 286 F. Supp. 2d 485, 496 (E.D. Pa. 2003), aff'd, 136 Fed. Appx. 551 (3d
Cir. 2005).  Defendants, however, have not asked that these claims be dismissed for this reason
and plaintiffs, to the extent that they have addressed this issue at all, have seemingly
acknowledged the error.  As such, the Court will address defendants' argument that, even if
plaintiffs had brought their claim under the Fourth Amendment, it is properly dismissed.

It is well settled that the Fourth Amendment protects individuals from arrest
without probable cause.  Berg v. County of Allegheny, 219 F.3d 261, 269 (3d Cir. 2000), cert.
denied, 531 U.S. 1072 (2001).

> In determining whether a constitutional violation exists, the Court
> will look to whether "the facts and circumstances within the
> arresting officer's knowledge are sufficient in themselves to
> warrant a reasonable person to believe that an offense has been or
> is being committed by the person to be arrested." *Merkle v. Upper
> Dublin School Dist.*, 211 F.3d 782, 788 (3d Cir. 2000) (citation
> omitted). "The proper inquiry in a section 1983 claim based on
> false arrest ... is not whether the person arrested in fact committed
> the offense but whether the arresting officers had probable cause to
> believe the person arrested had committed the offense."  *Dowling
> v. City of Philadelphia*, 855 F.2d 136, 141 (3d Cir. 1988).

Ankele v. Hambrick, 286 F. Supp. 2d at 494.

In the Court's view, the Complaint as well as the documents submitted by the
parties clearly demonstrate that plaintiffs can prove no set of facts which would establish that the
officers lacked probable cause to arrest Atwood or otherwise acted unreasonably.  Indeed,
plaintiffs have acknowledged in the Complaint that Atwood was in a one car accident in which
she drove her vehicle off the road, hit a utility pole and came to rest against a tree.  They also
acknowledge that the police subsequently determined that Atwood's speech was slurred without
disputing that determination.  In fact, plaintiffs seemingly concede that Atwood's speech was

9

slurred having attempted to explain that it was because she had been in an accident.  Complaint ¶ 32.  As well, plaintiffs have alleged in the Complaint that Atwood was "required to undergo several field sobriety tests which ... led to her being arrested for suspicion of DUI."  Complaint ¶ 33.  A reasonable inference, of course, is that she failed one or more of the tests.  These allegations certainly do not suggest that the officer lacked probable cause to arrest Atwood or that her arrest was otherwise unlawful.

Notably, plaintiffs have not discussed the allegations set forth in their Complaint other than to point the Court to paragraphs 37(b)(5)(6), and conclude that they have pled a sufficient factual basis for their claims.[1]  Review of those paragraphs, however, demonstrates that plaintiffs have pled no facts at all but have merely stated the conclusion that Atwood's arrest and the imposition of field sobriety tests were without probable cause.  As demonstrated above, however, these conclusions appear to ignore the rest of their own complaint.

They also ignore the EMS report which plaintiffs have provided to support their position.  As previously discussed, the EMS report indicates that when the ambulance arrived at the scene shortly after the accident, Atwood was unaware of having been in a motor vehicle accident and, in fact, denied the allegation, was herself complaining that her head hurt, had slurred speech, responded slowly to questions, could not figure out that she still had her seatbelt on when she tried to get out of the vehicle and could not find the release when so informed by the paramedics, could not comprehend what the paramedics were saying to her, took multiple attempts to step over a 6-8 inch high guide rail, and staggered to the ambulance where her son had been taken.  As well, her son indicated to the paramedics not only that Atwood was not acting normally and had almost fallen down the steps earlier that morning but that she was taking

_____

[1]Although plaintiffs have also referred to ¶¶ 37(b)(7),(8), (9), and (10), those paragraphs do not appears to address Atwood's claims for false arrest, malicious prosecution or excessive force.

medication.[2]  These facts, in the Court's view, simply preclude plaintiffs from establishing that Atwood's arrest was without probable cause.

Finally, it is no surprise that the police reports, criminal complaint and affidavit of probable cause submitted by defendants also contradict plaintiffs' assertion that probable cause to arrest Atwood was lacking.  Most notable is the additional information that an eye witness to the accident stated that Atwood made no attempt to negotiate the curve and that he could not recall seeing any brake lights.  The report also confirms that Atwood failed the field sobriety test which she was given because her gait was unsteady.  See Def. Exhs.  A, B, C.  These facts, which are unchallenged by plaintiffs, require a finding that they can prove no set of facts to support their claim that Atwood was arrested without probable cause.  As such, plaintiffs' claims for unlawful arrest and malicious prosecution are properly dismissed.[3]  See Ankele v. Hambrick, 286 F. Supp. 2d at 495, 497.

Plaintiffs' claim that excessive force was used in effectuating Attwood's arrest appears equally belied by their own Complaint which, relevant to this issue, states only that the officers placed Atwood in handcuffs thereby committing an assault and battery upon her person.  Complaint ¶ 37(b)(5).  In the Court's view, however, merely placing handcuffs on an individual while placing him or her under arrest does not, standing alone, suggest that force was used at all much less excessive force.  Indeed, we have found no case that suggests otherwise and plaintiffs

---

[2]We note here that although plaintiffs make much of the fact that the officers conducted a field sobriety test after the breathalyser test was negative for alcohol, Atwood was not charged with driving under the influence of alcohol but with driving under the influence of drugs or combination of drugs.  See Def. Exh. C.  See also 75 Pa. C.S.A. § 3802(d)(2).

[3]The above analysis is equally applicable to plaintiffs' claim for malicious prosecution as it also requires a showing that the defendants initiated a criminal proceeding without probable cause.  Estate of Smith v. Marasco, 318 F.3d 497, 521 (3d Cir. 2003).

have not provided us with one.  It therefore appears that plaintiffs have failed to state a claim for excessive force and that claim is properly dismissed as well.[4]

Defendants also argue that the civil rights claims brought against the Township defendants are properly dismissed as plaintiffs have failed to identify a municipal policy or custom pursuant to which its employees were acting that caused the alleged constitutional violation.  Having already found, however, that plaintiffs are unable to prove any set of facts which would demonstrate that such a violation occurred in the first instance it appears that plaintiffs' § 1983 claims against the Township should be dismissed without having to address defendants' argument.  It nevertheless appears that even if plaintiffs could establish that they somehow suffered a constitutional deprivation they have otherwise failed to state a claim against the Township defendants.

As previously discussed, to establish a claim under § 1983, a plaintiff must prove that the defendants deprived him or her of a right secured by the Constitution or the laws of the United States while acting under color of state law.  Shuman ex rel. Shertzer v. Penn Manor School District, 422 F.3d at 146.  A municipality, however, may not be held liable under § 1983 merely because its employees have acted unconstitutionally but, rather, may only be found liable for their own illegal acts.  Liability will therefore be imposed on a municipality under § 1983 only where the plaintiff is able to identify a municipal "policy" or "custom" that caused the constitutional violation.  Commissioners of Bryan County v. Brown ("Bryan County"), 520 U.S. 397, 403 (1997).  See Monell v. New York City Dept. of Social Services, 436 U.S. 658 (1978).

> Locating a "policy" ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality. . . . Similarly, an act

---

[4]Although defendants have also argued that the excessive force claim brought by Wesley should be dismissed as well, it does not appear from the Complaint that such a claim has been raised and, thus, the Court has not addressed defendants' argument in this regard.

> performed pursuant to a "custom" that has not been formally
> approved by an appropriate decisionmaker may fairly subject a
> municipality to liability on the theory that the relevant practice is
> so widespread as to have the force of law.

Bryan County v. Brown, 520 U.S. at 403-04 (citations omitted).  See Monell v. New York City
Dept. of Social Services, 436 U.S. at 690-91.

Even where a municipal policy or custom has been identified, however, "[t]he
plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the
'moving force' behind the injury alleged."  Bryan County v. Brown, 520 U.S. at 404.  In cases
such as this, where the policy or custom does not facially violate federal law, causation can be
established only by "demonstrat[ing] that the municipal action was taken with 'deliberate
indifference' as to its known or obvious consequences.  A showing of simple or even heightened
negligence will not suffice." Id. at 407 (citations omitted).

Here, plaintiffs have alleged in the Complaint that the Township has "municipal
policies, practices, or customs" in effect: 1) allowing the Police Department and its officers and
the Ambulance Service and its personnel "to improperly use police powers to assist medical
personnel in making medical decisions;" 2) regarding the failure to train of police officers and
medical personnel "as to their proper interaction and treatment of persons needing medical
attention following motor vehicle accidents;" 3) allowing the use of malicious prosecution "as a
means to fulfill the objectives of the [Ambulance Service] and to enforce medical decisions of
that service over the Plaintiffs;" and 4) "allowing the use of malicious prosecution based upon
prior differences between [Atwood] and [defendant Fruecht.]"  Complaint ¶¶ 37(a)(1-4).

With respect to the latter two alleged policies or customs, it appears clear that
plaintiffs are unable to prove any set of facts to establish that the Township had a policy or
custom of maliciously prosecuting individuals because of prior differences between Atwood and
defendant Fruecht in order to enforce medical decisions over plaintiffs.  Both of these alleged

"practices" appear to revolve around the allegedly malicious prosecution of Atwood for DUI which, by all accounts, occurred only one time and, thus, cannot be said to be so widespread as to have the force of law.  As such, it appears that plaintiffs are unable to prove a custom of maliciously prosecuting Atwood and to the extent plaintiffs have sought to hold the Township defendants liable in this regard those claims are properly dismissed.

Further, although the alleged practices of allowing its police officers to use their police powers to assist medical personnel in making medical decisions and failing to train its officers and medical personnel on the proper treatment of accident victims needing medical attention arguably identify municipal customs, plaintiffs have failed to allege, nor is the Court able to see, how a municipal custom regarding the making of medical decisions and the failure to train on the treatment of accident victims caused Atwood's allegedly unlawful arrest for DUI. See Commissioners of Bryan County v. Brown, 520 U.S. at 404.

Moreover, to the extent that these alleged customs could have interfered with plaintiffs' parental rights regarding their child's care, it simply cannot be said that such interference was a known or obvious consequence flowing from the officers' assisting paramedics in making medical decisions or from their lack of training on how to interact with accident victims.  Id. at 407.  Moreover, deliberate indifference in a failure to train case will ordinarily be found only where the failure has caused a pattern of violations which has not been alleged here.  Berg v. County of Allegheny, 219 F.3d at 276, citing Bryan County, 520 U.S. at 408-09.  As such, it appears that plaintiffs are unable identify, under any set of facts, a policy or custom that caused a Constitutional violation and their § 1983 claims against the Township defendants are properly dismissed.[5]

---

[5]We note here that plaintiffs have not specifically alleged in what manner the individual council members should be held liable and the only basis that can be gleaned from the Complaint is their role in advancing the alleged customs set forth above.  Not only has the Court already found that these alleged customs do not provide a basis for relief but to the extent that these

Having found that plaintiffs are unable to sustain their § 1983 claims against any of the defendants it appears that only state law claims for malicious prosecution, false imprisonment, unlawful arrest, excessive force, battery and emotional distress remain.  Where all claims over which the Court has original jurisdiction have been dismissed, however, the district court may decline to exercise supplemental jurisdiction over the remaining claims.  28 U.S.C. § 1367(c)(3).  Although declining to exercise jurisdiction is within the discretion of the district court, the Court of Appeals for the Third Circuit has held that, absent extraordinary circumstances, "pendent jurisdiction should be declined where the federal claims are no longer viable."  Shaffer v. Albert Gallatin Area School District, 730 F.2d 910, 912 (3d Cir. 1984) (citations omitted).  See Annulli v. Panikkar, 200 F.3d 189, 202 (3d Cir. 1999).

Here, there does not appear to be any extraordinary circumstances surrounding this case which would warrant the exercise of supplemental jurisdiction over plaintiff's state law claims and, thus, the Court should decline to do so.[6]

---

customs were approved by the council members in their legislative capacity they are entitled to absolute immunity.  See Carver v. Foerster, 102 F.3d 96, 100 (3d Cir. 1996).

[6]The Court nevertheless notes that even if the Court chose to exercise supplemental jurisdiction it appears that plaintiffs' state law claims are properly dismissed as plaintiffs have failed to allege any personal involvement in the events in question by the individual council members and the Township defendants appear immune from liability under the Pennsylvania's Political Subdivision and Tort Claims Act, 42 Pa. C.S.A. § 8541, et seq., which provides for immunity unless the claim falls within one of the eight statutory exceptions enumerated in § 8542(b), none of which applies here.  See Verde v. City of Philadelphia, 862 F. Supp. 1329, 1337 (E.D. Pa. 1994) (The eight enumerated exceptions to immunity provide the sole categories of liability for local agencies.).  See also Wakshul v. City of Philadelphia, 998 F. Supp. 585, 588 (E.D. Pa. 1998) (Finding that the willful conduct exception to immunity only abrogates the immunity afforded individual employees and not that afforded the local agencies which employ them.)  Moreover, to the extent that willful conduct serves to abrogate the individual officers' immunity, plaintiffs have not alleged that their conduct was willful or designed to achieve a wrongful purpose.  See Owens v. City of Philadelphia, 6 F. Supp. 2d 373, 394-95 (E.D. Pa. 1998).  Nor does it appear, given the allegations in the Complaint and the facts surrounding Atwood's accident, that they could prove willfulness under any set of facts.

For these reasons it is recommended that the motion to dismiss submitted on behalf of the Peters Township defendants and Peters Township Police Department defendants [Dkt. No. 26] be granted.

Within ten (10) days of being served with a copy, any party may serve and file written objections to this Report and recommendation.  Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto.  Failure to file timely objections may constitute a waiver of any appellate rights.

Respectfully submitted,


/s/   Amy Reynolds Hay
AMY REYNOLDS HAY


United States Magistrate Judge

Dated: 13 November, 2006


cc:      The Honorable David Stewart Cercone
         United States District Judge

         All counsel of record via Notice of Electronic Filing

16